STEVEN G. KALAR
Federal Public Defender
JEROME E. MATTHEWS
Assistant Federal Public Defender
1301 Clay Street
Suite 1350N
Oakland, CA 94612
Telephone: (510) 637-3500

Counsel for Defendant ALEJANDRO JIMENEZ

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | No. CR-15-00372 JD |
|---|---|---|
| Plaintiff, | ) ) | MOTION TO DISMISS COUNTS ONE AND TWO; MEMORANDUM OF POINTS |
| vs. | ) ) | AND AUTHORITIES |
| ALEJANDRO JIMENEZ, | ) ) | Date: January 15, 2016 |
| Defendant. | ) ) | Time: 11:00 a.m. |

MOTION TO DISMISS

**TABLE OF CONTENTS**

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      I.      Application of Doctrine of Vagueness in Criminal Cases. . . . . . . . . . . . . . . . . . . 3

      II.     The Statutory and Regulatory Scheme at Issue in This Case. . . . . . . . . . . . . . . . 3

      III.    The Statutory Terms "Receiver" and "Machinegun" Are Unconstitutionally Vague as Applied to this Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

            A.     The Term "Receiver" is Vague as Applied to Mr. Jimenez.. . . . . . . . . . . . 6

            B.     The Term "Machinegun" is Vague As Applied to Mr. Jimenez. . . . . . . . . 9

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# TABLE OF AUTHORITIES

## FEDERAL CASES

Bailey v. United States, 516 U.S. 137 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489 (1982). . . . . . . . . . . . . . . . . 4

Kolender v. Lawson, 461 U.S. 352 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Maynard v. Cartwright, 486 U.S. 356 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Smith v. Goguen, 415 U.S. 566 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

Thibodeau v. Portuondo, 488 F.3d 61 (2nd Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

United States v. 1,100 Machine Gun Receivers, 73 F. Supp. 2d 1289 (D. Utah 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 9

United States v. Bradley, 892 F.2d 634 (7th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . 10, 12, 13

United States v. Corcoran, Crim. No. 88-11 (W.D. Pa. Apr. 5, 1988). . . . . . . . . . . . . . . . . . 12

United States v. Lim, 444 F.3d 910 (7th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

United States v. Thompson/Center Arms Company, 504 U.S. 505 (1992). . . . . . . . . . . . 9, 13

United States v. Vest, 448 F. Supp. 2d 1002 (S.D. Ill. 2006). . . . . . . . . . . . . . . . . . . . . 6, 9, 13

United States v. Wada, 323 F. Supp. 2d 1079 (D. Ore. 2004). . . . . . . . . . . . . . . . . . . . . . . . 11

United States v. Williams, 364 F.3d 556 (4th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## FEDERAL STATUTES

26 U.S.C. § 5845. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 9, 10

26 U.S.C. § 5861. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

27 C.F.R. § 179.11. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

27 C.F.R. § 479.11. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

18 U.S.C. § 921(a)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 6, 10

18 U.S.C. § 922. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

Fed. R. Crim. P. 12. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

1  STEVEN G. KALAR
   Federal Public Defender
2  JEROME E. MATTHEWS
   Assistant Federal Public Defender
3  1301 Clay Street
   Suite 1350N
4  Oakland, CA 94612
   Telephone: (510) 637-3500
5
   Counsel for Defendant ALEJANDRO JIMENEZ
6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11 | UNITED STATES OF AMERICA,     )  No. CR-15-00372 JD
                                   )
12 |             Plaintiff,         )  MOTION TO DISMISS COUNTS ONE
                                   )  AND TWO; MEMORANDUM OF POINTS
13 | vs.                            )  AND AUTHORITIES
                                   )
14 | ALEJANDRO JIMENEZ,             )  Date:  January 15, 2016
                                   )  Time:  11:00 a.m.
15 |             Defendant.         )
                                   )

16
   TO:  UNITED STATES OF AMERICA, PLAINTIFF; BRIAN STRETCH, UNITED STATES
17        ATTORNEY; AND BRIGID MARTIN, ASSISTANT UNITED STATES ATTORNEY.

18        PLEASE TAKE NOTICE that on January 15, 2016, defendant ALEJANDRO JIMENEZ

19 ("Mr. Jimenez") will move this Court to dismiss counts one and two of the indictment on the

20 basis that the statutes under which he is charged are unconstitutionally vague as applied to him.

21        The motion is based upon Fed. R. Crim. P. 12, the following memorandum of points and

22 authorities, the court record, the arguments of counsel, and such oral and documentary evidence

23 that may be presented at the hearing of this motion.

24                              **INTRODUCTION**

25        Mr. Jimenez is charged in a two-count indictment with (1) knowingly possessing a

26 machine gun, specifically, an AR-15-style machine gun lower receiver with no serial number, in

violation of 18 U.S.C. § 922(o); and (2) knowing receipt and possession of an unregistered firearm, in violation of 26 U.S.C. § 5861(d). Because the statutory scheme under which he is charged is unconstitutionally vague as applied to Mr. Jimenez's case, this Court must dismiss counts one and two of the indictment.

**FACTS**

On July 1, 2015, Mr. Jimenez was arrested by agents of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") on the charge of violating 18 U.S.C. § 922(o), unlawful possession of a machinegun. Mr. Jimenez was arrested for having attempted to purchase a cast metal lower receiver that had been milled and had holes drilled in it. *See* attached photos AJ-US-009 and AJ-US-010. This was a bare receiver, with no parts attached.

This alleged purchase took place as the result of a sting operation. On June 16, 2015, ATF Agent Cates posted an advertisement for an "80%" receiver on Armslist.com. AJ-US-040.[1] The advertisement depicted a bare cast metal AR-15 lower receiver that "already has the extra sear pin hole drilled and the deeper control cavity for 'extra parts.'" AJ-US-045. The advertisement continued by stating "I don't have the extra parts so don't contact me about those." *Id.* Posted in the advertisement were two photographs of the receiver. *Id.*

On June 23, 2015, Mr. Jimenez sent a text message to the number listed in the advertisement, which was the telephone number of the undercover agent. AJ-US-040. After several text messages back and forth, the parties agreed to meet to complete the purchase. AJ-US-041. On July 1, 2015, the parties met at the parking garage of the Sun Valley Mall in Concord. AJ-US-041. After inspecting the AR-15 lower receiver, Mr. Jimenez gave the undercover agent $450, and briefly took possession of it. Mr. Jimenez was arrested immediately thereafter. AJ-US-042.

As part of the discovery, the government provided defendant with a report of the

---

[1] Copies of cited excerpts from discovery provided by the government are collectively attached to the Declaration of Jerome E. Matthews ("Matthews Decl.") as Exhibit A.

MOTION TO DISMISS 2

technical examination of the receiver by the ATF's Firearm Technology Criminal Branch. AJ-US-007. The report concluded that it was a "casting of an AR type receiver" that "has been fully machined to include the hole for the M-16 auto sear." AJ-US-007.

Citing as "pertinent authority" the language of 18 U.S.C. § 921(a)(3), which states that the term "firearm" includes "the frame or receiver of any such weapon," as well as the clause in 26 U.S.C. § 5845(b) which states that the definition of machinegun "shall also include the frame or receiver of any such weapon," the report concluded the lower receiver allegedly possessed by Mr. Jimenez "is a 'firearm' as defined in 18 U.S.C. § 921(a)(3)" and "is a 'machinegun' as defined in 26 U.S.C. § 5845(b)." AJ-US-008. ATF Agent Sarah Mauricio included these assertions in her affidavit for Mr. Jimenez's arrest, filed with the court on July 2, 2015. *See* Affidavit in Support of Criminal Complaint, at 4.

## ARGUMENT

The statutory scheme under which Mr. Jimenez has been charged is unconstitutionally vague because it both invites arbitrary enforcement and fails to give proper notice of the conduct that it prohibits. Because the statutes in the indictment are unconstitutionally vague as applied to the specific facts of his case, the Court should dismiss the charges against Mr. Jimenez.

### I. Application of Doctrine of Vagueness in Criminal Cases

Due process requires that a penal statute "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). Although the vagueness doctrine focuses both on actual notice to citizens and arbitrary enforcement, the Supreme Court has stated that "the more important aspect of vagueness doctrine 'is not actual notice, but the other principal element of the doctrine – the requirement that a legislature establish minimal guidelines to govern law enforcement.'" *Id.* at 358 (quoting *Smith v. Goguen*, 415 U.S. 566, 574 (1974)). Where the legislature fails to provide minimal guidelines, a criminal statute may permit "a standardless sweep [that] allows policemen,

prosecutors, and juries to pursue their personal predilections." *Smith*, 415 U.S. at 575.

"The degree of vagueness that the Constitution tolerates – as well as the relative importance of fair notice and fair importance – depends in part on the nature of the enactment." *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982). While economic regulations, for example, are subject to a less strict vagueness test, courts apply "a more stringent analysis when examining laws that impose criminal penalties because the consequences of imprecision are qualitatively more severe." *Thibodeau v. Portuondo*, 488 F.3d 61, 66 (2nd Cir. 2007).

Finally, vagueness challenges – such as the one in the instant case – that do not involve First Amendment freedoms must be analyzed as applied, "in light of the facts of the case at hand." *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988); *United States v. Lim*, 444 F.3d 910, 915 (7th Cir. 2006).

## II. The Statutory and Regulatory Scheme at Issue in This Case

Mr. Jimenez is charged with violating two separate criminal statutes: 18 U.S.C. § 922(o) (unlawful possession of a machine gun), and 26 U.S.C. § 5861(d) (receipt and possession of an unregistered firearm). To understand these charges it is necessary to refer to definitions contained in other statutes and to the text of one key regulation.

Section 922(o) of the Gun Control Act ("GCA") states that, other than under exceptions not relevant here, "it shall be unlawful for any person to transfer or possess a machinegun." 18 U.S.C. § 922(o). Mr. Jimenez is accused of having possessed an AR-15-style lower receiver, and the definitions section of that statute states that a "receiver" is a firearm. In particular, Section 921(a)(3) states:

> The term "firearm" means (A) any weapon . . . which will or is designed to or may be readily converted to expel a projectile by action of an explosive; (B) **the frame or receiver** of any such weapon. . . .

18 U.S.C. § 921(a)(3) (emphasis added).

The term "receiver" is in turn defined in an implementing regulation to the GCA as

MOTION TO DISMISS 4

follows:

> **Frame or receiver**: That part of a firearm which provides housing for the hammer, bolt or breechblock and firing mechanism, and which is usually threaded at its forward portion to receive the barrel.

27 C.F.R. § 479.11.[2]

Finally, the definition of "machinegun" is found in Section 5845(b) of the National Firearms Act, which states:

> The term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. **The term shall also include the frame or receiver of any such weapon,** any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

26 U.S.C. § 5845(b) (emphasis added).

### III. The Statutory Terms "Receiver" and "Machinegun" Are Unconstitutionally Vague as Applied to this Case

In the criminal complaint filed in support of the unlawful possession of machine gun charge, ATF Agent Sarah Mauricio alleged that the "AR-15 lower receiver is a 'firearm' as defined 18 U.S.C. § 921(a)(3), and is a 'machinegun' as defined in 26 U.S.C. § 5845(b), as referenced in 18 U.S.C. § 921(a)(3)." But the facts of this case show that the object allegedly possessed by Mr. Jimenez was not a "receiver" or a "firearm" or a "machinegun," as those terms have been defined in the statutes, and this confusion exists because this scheme of interlocking statutes is unconstitutionally vague with regard to AR-15 lower receivers. Because these laws as drawn by Congress are so vague, the ATF has filled this void by making inconsistent and capricious decisions as to what qualifies as a "receiver" and a "firearm" and a "machinegun."

---

[2] After the Homeland Security Act was passed in 2002, supervision of the ATF was transferred from the Secretary of the Treasury to the Department of Justice, and the regulations were renumbered. The text of the regulations stayed the same. What is now 27 C.F.R. § 479.11 was formerly numbered 27 C.F.R. § 179.11. Stephen P. Halbrook, FIREARMS LAW DESKBOOK, § 2:3, p. 211 (2014), excerpts attached to Matthews Decl. as Exhibit B.

MOTION TO DISMISS 5

1  Further, the vagueness of the statutes has also resulted in a situation where a person of reasonable

2  intelligence lacks notice to determine if a bare part, like the one allegedly possessed Mr. Jimenez,

3  falls within the conduct penalized by the statute.

### A. The Term "Receiver" is Vague as Applied to Mr. Jimenez

The part possessed by Mr. Jimenez does not meet the definition of "receiver" as set forth in 18 U.S.C. § 921(a)(3), and the agency's strained attempt to classify the gun part at issue here under that definition serves to highlight how vague the statute is. The ATF in this case determined that the AR-15-style part was a "receiver" and it was on that sole basis that it determined that the object was a "firearm." But the statute's term of "receiver" is so vague that "the government gets to pick and choose who is covered by [this term] and who isn't." *United States v. Vest*, 448 F. Supp. 2d 1002, 1012 (S.D. Ill. 2006) (machinegun statues unconstitutionally vague as applied to police officer). Likewise, a person of ordinary intelligence under Mr. Jimenez's circumstances would be unable to decipher the meaning of "receiver" and "firearm" so as to avoid falling within the conduct punished by the law. *Id.* at 1008-09.

Some guns, such as the AR-15 and the M-16, have both a lower and upper receiver. But the statute does not say anything about a lower and upper receiver – it just says "the receiver." *See* 18 U.S.C. § 921(a)(3) ("the term 'firearm' means . . . (B) the frame or receiver of any such weapon"). Put another way, the statute defines a firearm to include "**the** frame or receiver," not just half of a frame or receiver. Despite this, the ATF has ruled that the lower receiver of the AR-15 is the "receiver" and thus a firearm, and the upper receiver is not.

A 1971 Treasury Department memorandum shows that the agency's decision to designate the lower versus the upper receiver the "receiver" under the statute was an arbitrary one, based in part on serial numbering and other administrative requirements that had nothing to do with harmonizing the language of the statute with the mismatch created by a split receiver. The memorandum states:

The M-16 receiver is fabricated in two parts, and the Enforcement Division has

> determined that the lower portion should be considered the receiver. . . . Both parts were necessary to function as a "frame or receiver" in a machine gun. I can see some difficulty in trying to make cases against persons possessing only the lower part of a receiver, but insofar as the licensing, serial numbering, and special occupational tax requirements are concerned, I feel that this is the only practical solution.

ATF-12,736, Subject: M-16 Receivers, Internal Revenue Service, Department of the Treasury (March 1, 1971), excerpted in FIREARMS LAW DESKBOOK, § 6:9, p. 654-55. This memorandum reveals what may be the genesis of the agency's arbitrary interpretation of the vague statutory term "receiver." Further, as discussed *post*, even having made this decision that the lower receiver constitutes the "receiver," the agency has not been consistent in applying it.

Turning to the agency's implementing regulation, its definition of "receiver" – like the statute – does not speak of a lower and upper receiver. Moreover, the regulation defines "receiver" with specific terminology that actually *excludes* the lower receiver at issue in this case. In particular, 27 C.F.R. § 479.11 defines "frame or receiver" as "that part of the firearm which provides housing for the hammer, bolt or breechblock and firing mechanism, and which is usually threaded at its forward position to receive the barrel."

A district court in Utah has held that under this regulation, "[t]o qualify as a receiver, a part *must* provide 'housing for the hammer, bolt or breechblock, and firing mechanism,'" but that "there is no requirement under the regulation that the receiver must also be able to receive a barrel, by threading or by other means." *United States v. 1,100 Machine Gun Receivers*, 73 F. Supp. 2d 1289, 1292 (D. Utah 1999) (emphasis in original). In other words, according to this decision, the part must meet the first three requirements – *i.e.*, it must provide housing for the (1) hammer, (2) bolt or breechblock, and (3) firing mechanism before it meets the regulatory definition of "receiver."

The lower receiver in this case falls short of these requirements and even one of ATF's own understands why: the agency has sown confusion and inconsistency by its interpretations and enforcement policies. Daniel O'Kelly is one of the nation's leading firearms experts and was

MOTION TO DISMISS 7

an ATF Special Agent for more than 23 years. During a five-year period with the agency he was Chief Firearm Technology Instructor at the ATF National Academy and co-author of the curriculum which to this day is taught to new ATF agents and investigators.

Mr O'Kelly states that an AR-15 lower receiver does not meet the regulatory definition because it provides housing for only two required features – the hammer and the firing mechanism. *See* Declaration of Daniel O'Kelly ("O'Kelly Decl."), ¶ 6. The other two features set forth in the regulation are found in the upper receiver, which, in direct conflict with Section 479.11, ATF does not consider to be a "receiver" at all. *Id.* at ¶ 6. In the instant case, then, when ATF interpreted its own regulation to find that an AR-15 lower receiver meets Section 479.11's definition of "receiver," they not only acted contrary to the text of their own regulation – per the decision in *1,100 Machine Gun Receivers* – but again made an arbitrary choice, given that two of the features listed in the regulation are housed in the lower receiver and the other two are housed in the upper receiver.

Further, ATF has been inconsistent in its treatment of analogous guns with upper and lower receivers. As Mr O'Kelly notes, ATF has defined a Section 479.11 receiver to include the the upper receiver in some instances and the lower receiver in other instances, despite that in each instance the respective receivers house precisely the same parts and are functionally indistinguishable. For example, AR 15-type rifles and FAL-type rifles are similar in that they both have an "upper receiver" and a "lower receiver." On both models, the upper receiver is threaded at its forward portion to receive the barrel, and it houses the bolt or breechblock; on both models the lower receiver houses the hammer and firing mechanism. Under Section 479.11's definition, the upper receiver for each rifle meets two of the four conditions for being a "receiver," but ATF has always held that the upper receiver for an AR-15 type firearm is not a "receiver" under Section 479.11 and therefore not a "firearm." Rather, according to ATF, it is the AR-15 lower receiver that is the "receiver." O'Kelly Decl., ¶ 9. In the same breath, however, ATF has ruled that for a FAL-type firearm, the upper receiver is a "receiver" under Section

479.11 and is therefore a firearm, and that the lower receiver is nothing of consequence. O'Kelly Decl., ¶ 10. These completely opposing views are irreconcilable and, given the clear terminology of Section 479.11, contradictory. *Id.*, ¶ 10. And in neither case does either the upper or lower receiver meet the requirements of Section 479.11.

ATF's inconsistent treatment of the term "receiver" is the very embodiment of the standardless enforcement, where the vagueness of the statute has allowed "prosecutors, ATF agents and ultimately the jury the power to essentially define" what is illegal. *Vest*, 448 F. Supp. 2d at 1012. In the same way, the confusing and inconsistent way in which "receiver" has been interpreted shows that the statute fails to give appropriate notice of the conduct prohibited under the statute.

Finally, to the extent that the term "receiver" is ambiguous, the rule of lenity requires the Court to find that the object possessed by Mr. Jimenez does not fall within that term. In *United States v. Thompson/Center Arms Company*, 504 U.S. 505 (1992), the Court had to construe the term "made" within the context of the National Firearms Act, 26 U.S.C. § 5845(c), and consequently whether a special excise tax applied to respondent's sale of rifle and pistol parts that could be assembled as a non-firearm or firearm. In reaching its decision that the tax was inapplicable, the Court emphasized that because it was a criminal statute, "[i]t is proper . . . to apply the rule of lenity and resolve the ambiguity in Thompson/Center's favor." 504 U.S. at 518. Here, too, the Court is faced with resolving an ambiguity in a penal statute, and like the Court in *Thompson/CenterArms Co.*, this Court must apply the rule of lenity and accordingly rule in Mr. Jimenez's favor.

**B.     The Term "Machinegun" is Vague As Applied to Mr. Jimenez**

The vagueness problems that render the term "receiver" unconstitutional similarly afflict the term "machinegun" in 26 U.S.C. § 5845(b) as applied to the AR-15 lower receiver at issue in this case. Section 5845 reads:

The term "machine gun means any weapon which shoots, is designed to shoot, or

can be readily restored to shoot, automatically more than one shot, without
manual reloading, by a single function of the trigger. The term shall also include
the frame or receiver of any such weapon, any part designed and intended solely
and exclusively, or combination of parts designed and intended, for use in
converting a weapon into a machinegun, and any combination of parts from which
a machinegun can be assembled if such parts are in the possession or under the
control of a person.

26 U.S.C. § 5845(b). The Fourth Circuit in *United States v. Williams*, 364 F.3d 556, 558 (4th Cir. 2004) noted that the language which follows the first sentence (the "any weapon which shoots" clause) creates three separate categories which define a machinegun: "(1) a frame or receiver; (2) conversion parts; and (3) combination parts from which a machinegun can be assembled." *See also United States v. Bradley*, 892 F.2d 634, 635 (7th Cir. 1990) (explaining that "parts may be machine guns in any of three ways": (1) any part designed solely and exclusively for converting; (2) a combination of parts designed and intended for use in converting; and (3) any combination of parts from which a machinegun can be assembled. . .").

The AR-15 lower receiver allegedly possessed by Mr. Jimenez fits into none of these categories, and the ATF's efforts to shoehorn it into the definition of "machinegun" serves to highlight the vagueness of this statutory definition.

As explained by Judge Easterbrook of the Seventh Circuit, the first of the definitions – "a weapon which shoots, is designed to shoot, or can be readily restored to shoot automatically more than one shot . . ." – does not apply to the lower receiver allegedly possessed by Mr. Jimenez because it is not one of the definitions that applies to gun parts. *See Bradley*, 892 F.2d at 635 (explaining that "parts may be machine guns in any of three ways" under Section 5845(b), and those three "ways" do not include the "weapon which shoots, is designed to shoot, or can be readily restored to shoot" clause).

Settled rules of statutory construction prove the point another way. Taking the words of this clause at their ordinary meaning, this bare piece of cast metal, bereft of any other parts, does not "shoot," is not "designed to shoot," and cannot be "readily restored" to shoot automatically more than one shot. In construing a similarly worded provision of 18 U.S.C. § 921(a)(3), a

district court in Oregon emphasized that the statute before it "was not written in the past tense" and that the words in the provision – "will," "is designed to," and "may be readily converted to" – "must be given their ordinary meaning." *United States v. Wada*, 323 F. Supp. 2d 1079, 1082 (D. Ore. 2004) (citing *Bailey v. United States*, 516 U.S. 137, 144-45 (1995)). Here, looking to the ordinary meaning of the words in this clause, the bare bones lower receiver allegedly possessed by Mr. Jimenez does not presently "shoot," is not "designed to shoot," and cannot be "readily restored to shoot."

As to the second clause of the "machinegun" definition, as discussed *ante*, the AR-15 lower receiver allegedly possessed by Mr. Jimenez does not meet the definition of "receiver." And, for the reasons stated in the foregoing discussion, that term is unconstitutionally vague.

Turning to the next clause – "conversion" part or parts – this category is equally inapplicable to the lower receiver allegedly possessed by Mr. Jimenez. And, like the category "receiver," this is a category that has been interpreted in an inconsistent and unpredictable way by ATF.

In sum, the lower receiver at issue here is a single piece of metal with no parts attached. Thus, only the first of the two definitions in this category are applicable: *i.e.*, the relevant inquiry is whether it is a "**part** designed and intended **solely and exclusively** . . . for use in converting a weapon into a machinegun." The other definition ("combination of parts designed and intended for use in converting a weapon into a machinegun") has no application here because the object is a single "part."

Given that this definition requires that a single "part" must be designed and intended "solely and exclusively" for converting a weapon into a machinegun, the object allegedly possessed by Mr. Jimenez could not possibly fit within this category. As Mr O'Kelly makes clear, this lower receiver, even with the milling and the hole drilled, would still operate as a semi-automatic weapon when the upper receiver and necessary semi-automatic components are attached to it. O'Kelly Decl., ¶ 11.

The government may argue that the conversion "part" here is the hole drilled to receive an automatic sear. But a hole cannot be a part – it is not a component that is added. If the Court were to adopt that theory, then every AR-15 lower receiver into which a hole could be drilled would be a machine gun, leading to an absurd result that further illustrates the vagueness of this definition. Moreover, as was noted *ante*, even with the hole drilled for an automatic sear this receiver will still function as a semiautomatic weapon, and thus a hole does not "exclusively convert" the receiver into a automatically firing weapon. Therefore, the theory that a hole is a "part" under this "conversion" category must fail for that reason as well.

Indeed, the assertion that a hole is a part that converts this object into a machine gun is inconsistent with ATF's own ruling on the matter. ATF has ruled that it is the addition of a drop-in automatic sear to AR-15-type semiautomatic rifles that will convert those rifles into machineguns. *See* ATF Ruling 81-4, Matthews Decl., Exhibit C. In 1988, a federal district judge in the Western District of Pennsylvania dismissed a criminal case, concluding that it violated due process for the government to prosecute as machine guns AR-15s that lacked an auto-sear, given that ATF Ruling 81-4 said that it was the auto-sear that converted the AR-15 into a machine gun. *See United States v. Corcoran*, Crim. No. 88-11 (W.D. Pa. Apr. 5, 1988) (reprinted in FIREARMS LAW DESKBOOK, § 9:5, p. 130-31) (noting in its dismissal order that "[t]he essence of due process of law requires that the government make clear that conduct which constitutes a crime").

As to the final category defining "machinegun," the AR-15 lower receiver is not a "combination of parts from which a machinegun can be assembled." In *Bradley*, the Seventh Circuit ruled that a person is guilty of possessing a "statutory" machine gun under this clause if "one person has possession or control of *all* of the parts" from which a machine gun can be assembled. *Bradley*, 892 F.2d at 636 (emphasis added). The defendant in *Bradley* transferred six parts – including an auto sear – which together were enough to "transform a semi-automatic rifle into an automatic one," and the court therefore affirmed his conviction. *Id.* at 635. Here, by

contrast, Mr. Jimenez allegedly possessed only a bare lower receiver, and indisputably did not possess any other parts, much less an auto sear. Under *Bradley's* reasoning, he did not possess a "machinegun" under the "combination of parts" clause.

It is worth noting that Judge Easterbrook in *Bradley* added that "firearms laws define terms in surprising ways, causing all sorts of problems" and that "it doesn't take much effort to imagine harder cases" than the one before it. *Id.* at 637. While not stated directly, implicit in this discussion is the notion that these poorly drafted definitions – such as the clause "combination of parts from which a machine gun can be assembled" – could lead to difficult and inconsistent decisions by courts. Given the definition of "machinegun," that "harder" case is front and center.

Finally, in reaching its decision as whether the term "machinegun" is unconstitutionally vague, the Court must once again apply the rule of lenity and resolve any ambiguity in defendant's favor. See *Thompson/Center Arms Co.*, 504 U.S. 518.

The patchwork of definitions of "machinegun" contained in § 5845(b) inappropriately allows the government to choose who will fall within its contours. "Everyone can likely agree that the proper definition of who is to legally possess what kind of gun is not properly bestowed upon prosecutors, the judicial system or members of a jury," *Vest*, 448 F. Supp. 2d at 1003, but that very danger is realized in this case because the vagueness of the term "machinegun" has the result of impermissibly delegating this power to ATF. Simply stated, the term "machinegun," as is true with any statutory term, should give fair warning of the conduct it prohibits; because the statute fails to do so, it is unconstitutionally vague as applied to Mr. Jimenez and the Court should dismiss the charges against him.

# CONCLUSION

For the reasons stated, the Court should dismiss counts one and two of the indictment on the basis that the statutes charged are unconstitutionally vague as applied to Mr. Jimenez.

Dated: 13 November 2015

                                  Respectfully submitted,

                                  STEVEN G. KALAR
                                  Federal Public Defender

                                  /s/ Jerome Matthews

                                  JEROME MATTHEWS
                                  Assistant Federal Public Defender