STEVEN G. KALAR
Federal Public Defender
JEROME E. MATTHEWS
Assistant Federal Public Defender
555 - 12th Street
Suite 650
Oakland, CA 94607-3627
Telephone: (510) 637-3500

Counsel for Defendant ALEJANDRO JIMENEZ

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. CR 15 00372 JD |
| Plaintiff, ) | DECLARATION OF DANIEL O'KELLY |
| vs. ) | Date: 15 January 2016 |
| ALEJANDRO JIMENEZ, ) | Time: 1:00 p.m. |
| Defendant. ) | |

I, Daniel O'Kelly, declare:

1. I am not a party to this case. Excepting those matters stated on information and belief, which I believe to be true, I have personal knowledge of the facts set forth in this declaration and would testify competently to those facts under oath if called as a witness.

2. I presently operate the International Firearm Specialist Academy (IFSA). IFSA offers training that permits a firearm professional to become accredited as a Certified Firearm Specialist. This certification establishes that a person is competent in the areas of safe and accurate firearm and ammunition handling and identification.

3. I have extensive experience in the field of firearms and other weapons, and their use in law enforcement. I was employed with the Bureau of Alcohol, Tobacco, Firearms and

Explosives (ATF) as a Special Agent for more than 23 years. While employed at ATF, I held the following positions:

    Lead Firearm Technology Instructor at the ATF National Academy

    Co-author of the curriculum taught to new ATF agents and investigators

    Manager of the ATF undercover program

    Supervisory Special Agent for the State of Delaware

In-service instructor, presenting seminars on all aspects of firearms, ammunition and explosives

    4. I have extensive background as an "armorer," which in layperson's terms is basically a firearms mechanic, experienced in the making, repair and operation of firearms. I hold armorer certifications from thirteen firearms manufacturers, including Beretta, Colt, Smith & Wesson, Remington, SIG Sauer and Heckler & Koch.

    5. At the request of Assistant Federal Public Defender Jerome E. Matthews, I examined discovery provided by the government in this case, including the following:

    The complaint filed by ATF Special Agent Mauricio;

    The indictment;

All ATF reports of investigation, including photographs of the lower receiver and alleged statements of the defendant;

The Report of Technical Examination, dated 7 July 2015 and issued by ATF's Firearms Technology Criminal Branch.

    6. The lower receiver reportedly purchased by the defendant is not a "receiver" as defined by governing regulations. When I use the term "lower receiver" in this declaration, it does not necessarily mean "receiver" as defined by regulations. 27 C.F.R. § 479.11 defines a receiver as follows:

> Firearm frame or receiver. That part of a firearm which provides housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually threaded at its forward portion to receive the barrel.

An AR-15 lower receiver does not house the bolt or breechblock; the bolt of an AR-15 is housed in the part commonly known as the "upper receiver." Further, an AR-15 lower receiver is not threaded at its forward portion to receive the barrel. To the contrary, it doesn't receive the barrel at all. Again, it is the "upper receiver" of the AR-15 that is threaded at its forward position and does in fact receive the barrel. Thus, the lower receiver of an AR-15, such as that at issue in this case, only bears two of the four features listed by ATF in their own definition of a "receiver." The other two features are found in the upper receiver, which ATF does not consider to be a firearm.

7. Neither is the lower receiver at issue here a "machinegun." The machinegun statute provides:

26 U.S.C. § 5845(b):

The term "machine gun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon . . .

The lower receiver, standing alone, is not a "weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot." It is simply a piece of cast metal that must be equipped with numerous parts in order to become a weapon. And, as stated above, the lower receiver in this case is not a "receiver" as defined by 27 C.F.R. 479.11.

8. Because of my extensive experience as an ATF agent, supervisor and instructor, I am familiar with agency rulings on what constitutes a "receiver" and therefore a "firearm" under Section 479.11. I have reviewed a number of these rulings as they have been applied to functionally identical weapons and determined that they are inconsistent and often contradictory.

9. The AR 15-type rifle is the only rifle for which ATF has determined that the lower rather than upper receiver is a "receiver" as defined in Section 479.11. For all other rifles with upper and lower receivers, ATF calls the upper receiver a "receiver." For example, AR 15-type rifles and FAL-type rifles are similar in that they both have an "upper receiver" and a "lower

receiver." Photographs of the upper and lower receivers for these rifles are attached to this declaration as Exhibits A and B, respectively. On both models, the upper receiver is threaded at its forward portion to receive the barrel, and it houses the bolt or breechblock; on both models the lower receiver houses the hammer and firing mechanism. Under Section 479.11's definition, the upper receiver for each rifle meets two of the four conditions for being a "receiver," but ATF has always held that the upper receiver for an AR-15 type firearm is not a "receiver" under Section 479.11 and therefore not a "firearm." Rather, according to ATF, it is the AR-15 lower receiver that is the "receiver" and therefore a "firearm."

10. By contrast, ATF has ruled that for a FAL-type firearm, the upper receiver is a "receiver" under Section 479.11 and is therefore a firearm, and that the lower receiver is nothing of legal consequence. These completely opposing views are irreconcilable and, given the clear terminology of Section 479.11, contradictory.

11. I have reviewed the Technology Criminal Branch report's finding that the AR 15 lower receiver in this case was "fully machined to include the hole for the M-16 machinegun auto sear." That report may be technically correct, but the presence of a hole for an auto sear does not transform the lower receiver into a machine gun. According to the discovery provided by the government in this case, the defendant reportedly purchased a bare lower receiver, bereft of any other parts whatsoever, much less an auto sear. The presence of a hole for an auto sear in an AR-15 lower receiver does not affect the rifle's ability to function as a semi-automatic, single shot firearm when fully equipped with parts necessary to make it a functioning firearm. Stated another way, an AR-15 lower receiver with a hole drilled into it for an auto sear, but without the auto sear itself, would be fully functional as a semi-automatic, single shot firearm that one could legally buy at a gun store; it just won't function as a "machinegun" as defined by Section 479.11.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

EXECUTED this 13 day of November, 2015.

_____
DANIEL O'KELLY

**EXHIBIT A**
U.S. v. ALEJANDRO JIMENEZ,
CR-15-00372-JD
DECLARATION OF DANIEL
O'KELLY



AR 15 Lower Receiver



AR 15 Upper Receiver

**EXHIBIT B**

U.S. v. ALEJANDRO JIMENEZ,
CR-15-00372-JD
DECLARATION OF DANIEL
O'KELLY



FAL Lower Receiver



**FAL Upper Receiver**