UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ALEJANDRO JIMENEZ,<br><br>　　　　　Defendant. | Case No. 15-cr-00372-JD-1<br><br>**ORDER RE MOTION TO DISMISS**<br>Re: Dkt. No. 12 |

A grand jury indicted defendant Alejandro Jimenez on two counts: (1) possession of "a machinegun, specifically, an AR-15-style machinegun lower receiver, with no serial number," in violation of 18 U.S.C. § 922(o); and (2) receiving and possessing "a firearm, specifically, an AR-15-style machinegun lower receiver, with no serial number, not registered to him in the National Firearms Registration and Transfer Record," in violation of 26 U.S.C. § 5861(d). Dkt. No. 6. He moves to dismiss both counts under Rule 12 of the Federal Rules of Criminal Procedure on the ground that these laws are unconstitutionally vague as applied to him. Dkt. No. 12. The Court grants the motion in part and denies it in part.

## BACKGROUND

The charges arise out of a single event in July 2015 and the facts are uncontroverted. Jimenez is a convicted felon who cannot legally purchase a firearm. He met an undercover agent from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") at a shopping mall in Concord, California, to buy the lower receiver of an AR-15 rifle. He was arrested immediately after paying the agent and taking possession of the lower receiver. The receiver had been milled to accommodate an "auto sear" part for automatic firing but did not come with the part. *See generally* Dkt. No. 13 at 1-4 & Dkt. No. 12 at 11-12.

As the indictment shows, the key physical element of the case against Jimenez is the lower receiver. A receiver is the portion of a gun that houses the operative parts of the firing mechanism -- the "parts that make a gun fire." *United States v. 1,100 Machine Gun Receivers*, 73 F. Supp. 2d 1289, 1291 (D. Utah 1999). Many guns have a single receiver. The AR-15, however, has a split receiver that consists of an upper portion and a lower portion. The parties agree that the AR-15 lower receiver houses the hammer and firing mechanism, and the upper receiver houses the bolt or breechblock and is threaded at its forward position to attach to the barrel. Dkt. No. 12 at 8; Dkt. No. 13 at 13.

## DISCUSSION

### I. LEGAL STANDARD

Jimenez brings an as-applied challenge of vagueness against the statutes in the indictment. Federal Rule of Criminal Procedure Rule 12(b)(1) provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." At this stage of the case, the Court accepts as true the allegations of the indictment. *United States v. Blinder*, 10 F.3d 1468, 1471 (9th Cir. 1993).

A pretrial motion to dismiss a criminal case is appropriate "if it involves questions of law rather than fact." *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986) (citations omitted). A district court "may make preliminary findings of fact necessary to decide the questions of law presented by pretrial motions so long as the court's findings on the motion do not invade the province of the ultimate finder of fact." *Id.* (internal quotations and citations omitted). Jimenez and the Government have submitted declarations and exhibits in support of their arguments. Neither side has requested an evidentiary hearing.

### II. REGULATORY CONTEXT

The statutes at issue are not particularly complicated but do require some mapping to understand. The first count of the indictment charges Jimenez under 18 U.S.C. § 922(o) for

2

unlawful possession of a machinegun.[1]  For purposes of Section 922(o), "machinegun" has the same meaning given in Section 5845(b) of the National Firearms Act ("NFA").  18 U.S.C. § 921(a)(23).  The NFA states:

> The term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger.  <u>The term shall also include the frame or receiver of any such weapon</u>, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

26 U.S.C. § 5845(b) (emphasis added).

The second count charges Jimenez under Section 5861(d) of the NFA for possessing a firearm not registered to him in the National Firearms Registration and Transfer Record.  Section 5845(a) of the NFA defines a "firearm" to include a machinegun and uses the same description in Section 5845(b).  26 U.S.C. § 5845(a).

Consequently, Section 922(o) and Section 5861(d) criminalize the possession of a machinegun receiver, but neither statute says what a receiver is.  As the Government and Jimenez agree, the definition of receiver for purposes of both statutes is stated in the Code of Federal Regulations ("CFR").  The "receiver" is that "part of a firearm which provides housing for the hammer, bolt or breechblock and firing mechanism, and which is usually threaded at its forward portion to receive the barrel."  27 C.F.R. § 479.11.

### III. VAGUENESS CHALLENGE: "RECEIVER"

The parties' motion to dismiss briefing focused primarily on the issue of whether the meaning of "receiver" was unconstitutionally vague as applied to Jimenez.  Defendant contends that nothing in the statutes or CFR gave him fair notice that possessing the lower receiver of an AR-15 rifle would count as the criminal possession of "the receiver."  As a corollary, he argues that the lack of clear standards allows the ATF to engage in arbitrary enforcement practices.

---

[1] As the Sixth Circuit has noted, the United States Code uses the atypical spelling of "machinegun" rather than the standard "machine gun."  *United States v. Carter*, 465 F.3d 658, 661 (6th Cir. 2006).  For the sake of consistency, the Court follows the Code's practice.

3

The Ninth Circuit has set out a specific framework for evaluating whether a criminal law is void for vagueness. The "test is whether the text of the statute and its implementing regulations, read together, give ordinary citizens fair notice with respect to what the statute and regulations forbid, and whether the statute and regulations read together adequately provide for principled enforcement by making clear what conduct of the defendant violates the statutory scheme." *United States v. Zhi Yong Guo*, 634 F.3d 1119, 1122-23 (9th Cir. 2011). When, as here, the challenged laws do not involve First Amendment rights, vagueness is evaluated on an as-applied basis and "must be examined in the light of the facts of the case at hand." *United States v. Harris*, 705 F.3d 929, 932 (9th Cir. 2013). The inquiry is specific to the individual defendant and "turns on whether the statute provided adequate notice *to him* that *his particular conduct* was proscribed." *Id*. (emphasis added). "For statutes involving criminal sanctions the requirement for clarity is enhanced." *Id*. (internal quotation marks and citations omitted).

The gist of Jimenez's challenge is that the AR-15 lower receiver does not fit the CFR definition of a "receiver" that is illegal under the gun laws. Significantly, the parties agree on all the factors material to this challenge. They agree that Section 479.11 of the CFR defines a receiver as the "part of a firearm which provides housing for the hammer, bolt or breechblock and firing mechanism, and which is usually threaded at its forward portion to receive the barrel." This means a receiver must have the housing for three elements: hammer, bolt or breechblock, and firing mechanism. As the plain language of Section 479.11 shows, barrel threading is not a mandatory element. *See also 1,100 Machine Gun Receivers*, 73 F. Supp. 2d at 1292 (same). They also agree that the lower receiver for which Jimenez was arrested and indicted houses only two of the required features -- the hammer and the firing mechanism. Dkt. No. 12 at 8; Dkt. No. 13 at 13. The Government forthrightly concedes that this format "does not perfectly fit the CFR section definition." Dkt. No. 13 at 13.

In light of this record, the Government's task is to show that Jimenez had fair notice that his particular conduct was proscribed and that ATF's action against him was not arbitrary. *Harris*, 705 F.3d at 932. It has not succeeded. Tellingly, the Government makes no effort to parse the statutes or the CFR for proof of notice or clear standards. In effect, it concedes that the plain

4

language of the law does not answer the vagueness challenge.  This is tantamount to acknowledging that even if Jimenez had read the rules and regulations, he could not have known that the lower receiver of the AR-15 would be covered by them.  That alone is a strong blow against the Government's position.

The Government's effort to find clear notice and standards outside the statutes and CFR is unpersuasive.  It insists that the "'receiver' of an AR-15/M-16-style firearm is and always has been the lower portion" like the one Jimenez acquired.  Dkt. No. 13 at 1; *see also id*. at 11 ("Since the passage of the [Gun Control Act] of 1968, federal law has regulated the lower portion of the AR-15/M-16 as the 'receiver' of the firearm.").  That might be the case, but the salient question is how a person -- and specifically Jimenez -- contemplating the purchase of an AR-15 lower receiver would have known about this interpretation or that ATF would treat buying one as a crime.  The Government has little to offer in answer.

For the purported notice, the Government relies on two obscure bureaucratic communications from the early 1970s.  One is a memorandum on Internal Revenue Service letterhead dated March 2, 1971, from "J. R. Wachter" to "J. F. McCarren."  Dkt. No. 13 at Ex. 4.  This one-page document appears to be an inter-agency discussion of how the split receiver of the M-16, the military version of the AR-15, should be taxed.  The document is striking for several reasons, all of which run counter to the Government's argument.  It addresses a federal tax issue and not a federal criminal gun law.  It gives lukewarm endorsement at best to treating a lower receiver as the operative portion.  The letter says the M-16 receiver "apparently" has two portions and that the lower portion "comes closest to meeting the definition of frame or receiver" in the CFR but the author could "see some difficulty in trying to make cases against persons possessing only the lower part of a receiver." *Id*.  And the Government provides no facts showing that the memo ever saw the light of day outside a tiny circle of government employees.  How this document could have provided fair and adequate notice to anyone, let alone Jimenez, is left unsaid.

The Government's other document is even less impressive.  This one is a January 19, 1972 letter from an ATF director to a gun seller in California.  Dkt. No 13 at Ex. 4.  This very short

5

two-paragraph letter says "in reply to your letter" that ATF "has determined for the purposes of marking and control, the lower receiver . . . is the receiver" for the AR-15. No citation to the United States Code, the CFR or any other publicly available document is provided. And once again, nothing indicates that anyone other than the author and recipient ever saw or knew about this letter or the ATF's purported enforcement determination. There is certainly no indication that Jimenez or anyone in his circumstances would ever have known about this document.

The Government also points to a 1977 letter about a different rifle, the FN/FAL. Dkt. No. 13 at Ex. 4. Like the AR-15, the FN/FAL has a split receiver, and the ATF's Central Region had decided that the lower portion should be treated as the receiver. In the letter, ATF's in-house counsel advises the acting assistant director to reject that decision and treat the FN/FAL's upper portion as the receiver. Counsel states that it is "totally incorrect" to treat all split receivers in the same way and that each "split receiver weapon should be examined" individually to determine "if the upper or lower half of the receiver more nearly fits the legal definition of 'receiver.'" *Id*. The letter ends by recommending that ATF advise the Department of Justice that the upper portion was the operative part for the FN/FAL because a defendant had pled guilty -- the implication is erroneously -- to machinegun possession based on the lower part.

The Government's reliance on this letter is particularly puzzling because it affirmatively undercuts the claim of fair notice. It voices disagreement and even a degree of confusion within ATF about how to handle split receivers under the law. It even recognizes, in the circumspect language of counsel, that some criminal convictions might be in doubt from the lack of enforcement clarity for split receivers. And like the other two documents the Government proffers, it has all the hallmarks of a purely internal communication that never reached the public at large or Jimenez specifically.[2]

Overall, the Government's position is striking for the utter lack of evidence showing that the public had fair notice of potential criminal liability for possessing only an AR-15 lower

---

[2] For completeness, the Court notes that the Government also provides a one-page letter that appears to be dated February 23, 1971. It is almost unreadable and in any event is substantively irrelevant.

6

receiver. This absence of adequate notice sharply distinguishes this case from those that denied a vagueness challenge to other criminal laws. In *United States v. Harris*, for example, the Ninth Circuit declined to set aside a conviction for conspiracy under a statute that prohibited carrying a "concealed dangerous weapon" on aircraft. The defendant was an airport employee who snuck a passenger's "pocketknife with a blade that is almost two-and-a-half inches long past a security checkpoint" and then gave it back to the passenger who then boarded an airplane. *Harris*, 705 F.3d at 930. A Transportation Security Administration agent had previously prevented the passenger from passing through a security checkpoint with the knife. The defendant appealed his conditional guilty plea on the ground that "dangerous weapon" was too vague a formulation to provide adequate notice to him that his conduct was proscribed. *Id*. at 932. The Circuit turned that argument away in short order by finding that the defendant had ample notice that his conduct was illegal. The defendant worked at the airport and knew the TSA had already blocked passage of the knife, and signs throughout the airport expressly prohibited all knives. *Id*. On that record, the Circuit had no trouble finding that it "should have been clear to him that § 46505's prohibition of 'dangerous weapon[s]' includes a pocketknife with a blade almost two-and-a-half inches long" and that the defendant had "adequate notice that his conduct was prohibited." *Id*. *See also Zhi Yong Guo*, 634 F.3d. at 1122-23 (rejecting vagueness challenge to export violation because export laws, although complex, could be pieced together to determine whether a particular item was regulated).

No evidence of that type was presented here. Unlike the defendant in *Harris*, Jimenez did not have any notice that buying the lower receiver of an AR-15 would subject him to criminal penalties under federal law on the basis that the lower receiver would be treated as "the receiver" under the statutory definition of "machinegun." Unlike the defendant in *Zhi Yong Guo*, he could not turn to any statute or regulations, however complicated, to determine that acquiring the lower receiver alone would legally be treated as the criminal act of acquiring a "receiver." Nothing available to Jimenez put him on adequate notice that his conduct was prohibited under the machinegun laws. *Harris*, 705 F.3d at 932.

7

1    As a last gambit, the Government says that Jimenez simply must have known what he was

2 doing was illegal based on a conversation he had with one of the undercover agents. But that is

3 pure ipse dixit, as the cited transcript shows:

4         Defendant:  It's legal right now?
        UC:  What do you mean 'it's legal right now'?
5         Defendant:  Yeah, like I could do it. Like I could take it to the
        range right now and test it out.
6         UC:  That right there's a fucking machinegun. You take
        that to the range you're gonna draw all kinds of
7         attention.

8 Dkt. No. 13 at 3. Nothing here shows that Jimenez knew the lower receiver would be deemed

9 illegal; to the contrary, he appears to think he was buying a legal item, and the undercover agent

10 certainly did not clearly apprise him otherwise.

11    The Government's notice theory is further weakened by an element of randomness in the

12 ATF's enforcement practices. For some split receiver rifles like the FN/FAL, the upper receiver is

13 classified as a weapon but the lower receiver is legal to acquire. Dkt. No. 13 at 12-13. The

14 opposite is true for the AR-15. The Government agrees that it is perfectly legal to possess an AR-

15 15 upper receiver but the lower receiver is "the receiver" for statutory and regulatory purposes.

16 Dkt. No. 13 at 5. How would any citizen, and specifically Jimenez, be on fair notice of these

17 nuances? Where are these enforcement interpretations spelled out in plain language for all to see?

18 The Government does not say. Certainly nothing in CFR Section 479.11 would have given

19 Jimenez fair warning before making his purchase and neither the ATF nor any other resource

20 provided any independent notice. If the enforcement agencies had treated all receivers, including

21 portions of split receivers, as illegal, it is possible Jimenez's vagueness argument would result in a

22 different outcome. But they didn't, and the patchwork of enforcement practices is another strike

23 against the Government's position. *See United States v. Ocegueda*, 564 F.2d 1363, 1365-66 (9th

24 Cir. 1977) (rejecting vagueness challenge to "unlawful user" of narcotics in a statute because "use

25 of heroin by laymen is not permissible in any circumstance" but noting that if the defendant had

26 "used a drug that may be used legally by laymen in some circumstances . . . we would be faced

27 with an entirely different vagueness challenge to the term 'unlawful user' in s 922(h)(3)").

28

The notice theory was the Government's main opposition to Jimenez's motion, and its ancillary arguments fare no better. It suggests that two circuit courts outside the Ninth Circuit have rejected vagueness challenges like Jimenez's. *See* Dkt. No. 13 at 7-8 (citing *United States v. Carter*, 465 F.3d 658 (6th Cir. 2006) and *United States v. Williams*, 364 F.3d 556 (4th Cir. 2004)). Not true. Neither decision involved an AR-15 rifle, split receivers or other facts similar to the ones here and neither provides any useful guidance on whether a defendant in Jimenez's position should have known that an AR-15 lower receiver in the configuration he possessed would be illegal under the "receiver" portion of the machinegun definition.

The Government also contends that sustaining defendant's position on the receiver issue would permit "felons, addicts, and other prohibited persons . . . [to] possess with impunity" the receivers of a semi-automatic or fully automatic AR-15/M-16. Dkt. No. 13 at 15. That goes too far. The only issue here is whether this defendant had notice that his conduct was criminal under the specific circumstances of this case. Other cases might involve facts that show adequate notice to the defendant or vitiate a vagueness challenge on other grounds.

In addition, however grave and legitimate the Government's concerns may be, they do not compel a different result in this case. As the Supreme Court has held:

> Appellants stress the need for strengthened law enforcement tools to combat the epidemic of crime that plagues our Nation. The concern of our citizens with curbing criminal activity is certainly a matter requiring the attention of all branches of government. As weighty as this concern is, however, it cannot justify legislation that would otherwise fail to meet constitutional standards for definiteness and clarity. *See Lanzetta v. New Jersey*, 306 U.S. 451 (1939). . . . Although due process does not require "impossible standards" of clarity, *see United States v. Petrillo*, 332 U.S. 1, 7-8 (1947), this is not a case where further precision in the statutory language is either impossible or impractical.

*Kolender v. Lawson*, 461 U.S. 352, 361 (1983). *Kolender* involved an attack on the facial validity of a statute but the spirit of its holding is equally apt here. The solution to the Government's worry is not to relax our constitutional protections but to give proper public notice and possibly revise the regulations to make plain that conduct like Jimenez's will result in criminal exposure.

That resolves the vagueness challenge on the receiver issue in Jimenez's favor. As a closing point, the Court is concerned about a troubling theme in the Government's argument on

9

this issue. In essence, the Government says that its construction of the gun laws should prevail and Jimenez should go to jail because the ATF has consistently enforced that interpretation of the law. That is a questionable perspective to take on law enforcement. The evidence of consistency and notice are weak, as discussed, but even so, consistency alone does not make a practice constitutional, reasonable or fair. *See F.J. Vollmer Co., Inc. v. Magaw*, 102 F.3d 591, 598 (D.C. Cir. 1996) (although ATF "had followed its interpretation of the Firearms Act since at least the early 1980s, we do not see how merely applying an unreasonable statutory interpretation for several years can transform it into a reasonable interpretation."). And the value of ATF's claimed consistency is doubtful. Since the gun laws and regulations do not squarely state how split receivers for rifles like the AR-15 will be treated, ATF is perfectly free to take a totally different enforcement approach at any time. It might have enforced the current AR-15 lower receiver interpretation to a fare-thee-well for many years but that in no way means it can't flip to a new interpretation should a future in-house counsel decide to break with her predecessor's advice from the 1970s. The vagueness doctrine is intended to foreclose that opportunity for arbitrary enforcement decisions.

The indictment is dismissed to the extent the Government's prosecution of Jimenez under 18 U.S.C. § 922(o) and 26 U.S.C. § 5861(d) is based on the theory that he possessed a "receiver" as that term is defined in 27 C.F.R. § 479.11.

**IV. VAGUENESS CHALLENGE: "MACHINEGUN"**

The motion is denied with respect to prosecution under another part of the machinegun definition. As Jimenez acknowledges, there are other ways of meeting the definition of "machinegun" under 26 U.S.C. § 5845(b) beyond possessing the "receiver." Based on the facts of this case, one possible avenue is that the AR-15 lower receiver Jimenez possessed could be deemed a "part designed and intended solely and exclusively . . . for use in converting a weapon into a machinegun."

Jimenez frames an attack on this possibility as a vagueness challenge, but that is misdirected. Whether he can be convicted on this basis is a question of fact and not one of law or vagueness, and Jimenez's argument underscores that important difference. He says, for example,

that "the object allegedly possessed by Mr. Jimenez could not possibly fit within this category" because "even with the milling and the hole drilled," the lower receiver "would still operate as a semi-automatic weapon when the upper receiver and necessary semi-automatic components are attached to it." Dkt. No. 12 at 11.

The Government contends that Jimenez had "full knowledge of the receiver's critical modifications that allow automatic fire." Dkt. No. 13 at 7. It also alleges that automatic functionality was the reason Jimenez sought to purchase this lower receiver. *See id*. at 18 (arguing defendant purchased the lower receiver "because it had the capability when additional parts were added to fire automatically").

This dispute raises fact issues that are not suitable for resolution on a motion to dismiss. As an initial matter, the Court cannot conclude on the current record that the term "machinegun" -- excluding "frame or receiver" -- was vague as applied to defendant. If Jimenez had read 26 U.S.C. § 5845(b) prior to making his purchase, he would fairly have been on notice that his conduct could be proscribed because what he was about to purchase could be a "part designed and intended solely and exclusively . . . for use in converting a weapon into a machinegun." *Harris*, 705 F.3d at 932. Whether the evidence ultimately shows that the lower receiver he bought fits that definition is a question that the Court cannot answer on a motion to dismiss. *Shortt Accountancy Corp.*, 785 F.2d at 1452. That is for the trier of fact to decide.

Neither party addressed the "machinegun" issue in any detail. Consequently, the Court does not foreclose at this time prosecution of Jimenez under any part of the machinegun laws not dependent on possession of a "receiver."

**CONCLUSION**

The indictment is dismissed to the extent the Government's prosecution in this case is based on the theory that defendant possessed a "frame or receiver" under the relevant statutory and regulatory framework. Dismissal is denied for prosecution under "machinegun."

**IT IS SO ORDERED.**

Dated: June 6, 2016

JAMES DONATO
United States District Judge

11